07-3862-cr
*USA v. McCourty*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2008

Docket No. 07-3862-cr

Argued: November 13, 2008                    Decided: April 9, 2009

UNITED STATES OF AMERICA,

Appellee,

v.

PETER McCOURTY,

Defendant-Appellant.

Before: MINER, SOTOMAYOR, and KATZMANN, Circuit Judges.

Appeal from a judgment of conviction and sentence entered September 7, 2007, in the United States District Court for the Eastern District of New York (Gleeson, J.), convicting defendant-appellant, after a jury trial, of three counts of possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), and (b)(1)(C), and sentencing him to a term of incarceration of 78 months, which defendant is currently serving, a term of supervised release of 3 years, and a $300 special assessment, the District Court having rejected defendant's claims of constructive amendment and double jeopardy.

AFFIRMED; and REMANDED for resentencing.

<div style="margin-left:40%">

Edward S. Zas (of counsel), Federal Defenders of New York, Inc., Appeals Bureau, New York, New York, for Defendant-Appellant.

Elizabeth A. Latif (on the brief), Peter A. Norling (of counsel), Assistant United States Attorneys (Benton J. Campbell, United States Attorney for the

</div>

Eastern District of New York), Brooklyn, New York, for Appellee.

MINER, Circuit Judge:

Defendant-appellant appeals from a judgment of conviction and sentence entered on September 7, 2007, in the United States District Court for the Eastern District of New York (Gleeson, J.), convicting defendant, after a second jury trial, of three counts of possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), and (b)(1)(c). Following the convictions, the District Court imposed a sentence of incarceration of 78 months; a term of supervised release of 3 years; and a $300 special assessment. The defendant currently is serving his sentence.

Appellant contends that his rights under the Grand Jury Clause and the Double Jeopardy Clause of the Fifth Amendment were violated because (1) the trial court provided a special verdict sheet to the jury in which Count Three of a Third (and final) Superseding Indictment was split into two parts ("a" and "b"), with each part describing a different time and place for the charge of possession with intent to distribute a controlled substance on May 11, 2006; and (2) the trial court allowed the defendant to be retried on part "a" following the jury's verdict of not guilty as to part "b" and its failure to reach a verdict as to part "a." Appellant also claims that some or all of the testifying police officers lied under oath about material matters at defendant's second trial, and, therefore, that the District Court abused its discretion in denying his Rule 33 motion for a new trial in the interest of justice. Finally, Appellant argues that he should be entitled to re-sentencing, pursuant to Kimbrough v. United States, 128 S. Ct. 558 (2007), so that the District Court may consider the Appellant's argument post-Kimbrough that the Sentencing

2

Commission's disparate treatment of "crack" and powder cocaine was unwarranted and rendered the advisory sentencing range in this case "greater than necessary" under 18 U.S.C. § 3553. For the reasons that follow, we affirm the judgment of conviction but remand for the limited purpose of allowing the District Court to re-sentence the Appellant in light of Kimbrough.

**BACKGROUND**

I.      The First Trial

On June 8, 2006, a grand jury in the Eastern District of New York returned an indictment charging defendant-appellant Peter McCourty with four counts: possession with intent to distribute unspecified amounts of cocaine and cocaine base on June 16, 2005, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count One"); possession with intent to distribute unspecified amounts of cocaine and cocaine base on or about and between May 1, 2006, and May 11, 2006, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count Two"); possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) ("Count Three"); and possession of a firearm in furtherance of a drug trafficking crime, the crime charged in Count Two, in violation of 18 U.S.C. § 924(c) ("Count Four").

On July 27, 2006, a grand jury returned a superseding indictment charging McCourty with the same four counts as in the initial indictment but adding to Count One a specification of a quantity of five grams or more of cocaine base and a reference to 21 U.S.C. § 841(b)(1)(B)(iii), which provides an enhanced penalty for possession of that amount of cocaine base. On October 19, 2006, in response to a September 12, 2006 pre-trial motion made by the defense, the grand jury returned a second superseding indictment. The second superseding indictment separated Count Two of the superseding indictment into two counts, one charging possession of

3

unspecified amounts of cocaine and cocaine base on May 1 and the other charging possession of unspecified amounts of cocaine and cocaine base on May 11. These counts became Count Two (May 1) and Count Three (May 11), respectively.

McCourty also moved in his September 12, 2006 pre-trial motion for severance of Count One of the second superseding indictment.[1] He argued that the offense charged in Count One involved an incident that took place almost a year before the incidents described in the remaining counts. McCourty also argued that the events of May 11, 2006, involved a chase, as well as an alleged gun possession that might prejudice the jury in regard to Count One. The District Court granted the motion and ordered that Count One be tried separately from the remaining counts. The parties agreed that Count Four (the felon-in-possession count) would be tried separately from Counts Two, Three, and Five and that trial would proceed immediately on Count Four after the jury returned its verdict on the latter counts.

On December 11, 2006, the grand jury returned a third — and final — superseding indictment (the "Superseding Indictment"), which added a quantity of five grams or more of cocaine base to the previously unspecified amount of cocaine base charged in Count Three (May 11) and a reference to 21 U.S.C. § 841(b)(1)(B)(iii). In sum, McCourty was charged under the Superseding Indictment with possession of an unspecified amount of cocaine and five grams or more of cocaine base on June 16, 2005 (Count One); possession of unspecified amounts of cocaine and cocaine base on May 1, 2006 (Count Two); possession of an unspecified amount of cocaine and five grams or more of cocaine base on May 11, 2006 (Count Three); possession of a

---

[1] When McCourty submitted his pre-trial motion, dated September 12, 2006, his motion necessarily referred to the second superseding indictment because the grand jury had not yet returned the December 11, 2006 Superseding Indictment.

4

firearm as a convicted felon (Count Four); and possession of a firearm in furtherance of a drug trafficking crime, i.e., the drug-trafficking crime charged in Count Three (Count Five).

Prior to the start of the first trial, defense counsel raised the issue of a "duplicity problem" with regard to Count Three.[2] Defense counsel claimed that Count Three alleged that McCourty had possessed both powder cocaine and at least five grams of cocaine base on or about May 11, 2006. Accordingly, counsel argued, in the event of a simple "guilty" verdict returned by the jury as to Count Three, that verdict would not reveal either the type or quantity of drugs that McCourty would be found to have possessed. Defense counsel submitted that the duplicity problem could be "cured" by a "special interrogatory" asking the jury if it found that McCourty possessed over five grams of crack cocaine. The District Court stated that the issue could be addressed on the verdict sheet ("Verdict Sheet") for Count Three and that it would "deal with this at the charge conference." The court then swore in the jury, and the first trial began. With regard to Counts Two, Three, and Five, the government presented the following evidence in support of its case-in-chief.

A.      Count Two (Drug Possession On May 1, 2006)

New York Police Department ("NYPD") Officers Kirk Anderson and Gabriel Dobles testified as follows concerning the events on May 1, 2006: The officers encountered McCourty at approximately 6 p.m., while they were on routine anticrime patrol in an unmarked vehicle. Officer Joseph Rodriguez of the NYPD was also in the vehicle with them. The three officers were traveling eastbound on Hegeman Avenue in Brooklyn, New York, when Officer Anderson

---

[2] A duplicitous indictment is "[a]n indictment containing two or more offenses in the same count" or "[a]n indictment charging the same offense in more than one count." BLACK'S LAW DICTIONARY 788 (8th ed. 2004).

saw McCourty standing on the south side of Hegeman Avenue, across from the east side of the Bristol Street corner. Officer Anderson was approximately 10-to-12 feet from McCourty when he saw McCourty standing in an unobstructed no-parking zone. Officer Anderson observed McCourty conduct a hand-to-hand drug transaction with another individual: McCourty was holding an inside-out rolling tobacco pouch in one hand and passed a smaller bag from that pouch to another individual. Officer Anderson then told the other officers in his vehicle what he had seen, and he and the other officers exited the patrol car and approached McCourty. When McCourty observed the officers approaching him, he turned away and dropped the tobacco pouch to the ground and began to walk in the opposite direction. Officer Anderson then recovered the pouch from the ground. McCourty was placed under arrest, and a post-arrest search of McCourty revealed baggies of marijuana, which the officers seized. At the time of his arrest, McCourty stated to the officers: "You're taking me for this bullshit? Next time I'll just run." The substance contained within the pouch McCourty dropped to the ground tested positive for powder and crack cocaine.

Based on this incident, McCourty was charged in Kings County Criminal Court with criminal possession of a controlled substance in the seventh degree, a class A misdemeanor, and unlawful possession of marijuana, and he was released. The state charges were eventually adjourned in contemplation of dismissal.

B.     Counts Three (Drug Possession On May 11, 2006) and Five (Firearm Possession
         On May 11, 2006)

The offense described in Count Three of the Superseding Indictment encompassed two events:

6

On or about May 11, 2006, within the Eastern District of New York, the defendant PETER McCOURTY did knowingly and intentionally possess with intent to distribute a controlled substance, which offense involved (a) a substance containing cocaine, a Schedule II controlled substance, and (b) 5 grams or more of a substance containing cocaine base, a Schedule II controlled substance.

(Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(iii) and 841(b)(1)(C); Title 18, United States Code, Sections 3551 et seq.).

At trial, Officers Anderson and Dobles provided testimony regarding the events of May 11, 2006. These events served as the basis for the charges included in both Counts Three and Five. At approximately 11 p.m. on that day, Officers Anderson and Dobles were on patrol with their supervising officer, Sergeant Thomas Lent. The officers were traveling southbound on Amboy Street and, when the vehicle reached the intersection of Amboy Street and Hegeman Avenue, the officers saw McCourty standing on the northeast corner of the intersection, only two blocks from where McCourty was arrested on May 1.

The officers were approximately 10-to-12 feet from McCourty, who was standing in an area well-lit by street lights and also lit by lights along the wall of the parking garage across the street. The officers observed McCourty holding an inside-out rolling tobacco pouch in one hand and passing a smaller bag from that pouch to another individual. After observing this, the officers drove their police vehicle up onto the sidewalk, at which time McCourty, who saw the officers and their car on the sidewalk, ran away. McCourty ran across Hegeman Avenue towards Amboy Street. While in flight, McCourty dropped the item that he had been holding onto Hegeman Avenue. Officer Anderson recovered the item, which was later determined to be a package containing powder cocaine and crack cocaine, and continued to chase McCourty. Officer Anderson testified that, during the chase, he observed McCourty clutching a gun and

attempting to put it into his pocket or waistband.

Officers Dobles and Lent pursued McCourty into a parking lot on Amboy between Hegeman Avenue and Linden Boulevard, but they did not catch him. The officers then chased McCourty into a three-family house at 1043 Thomas Boyland Street, but he eluded the officers at that location. Approximately twenty minutes later, the officers went to McCourty's grandmother's apartment located at 1381 Linden Boulevard, Apartment 5A, which was an address where the officers believed McCourty could be found. Once there, Officer Dobles observed McCourty in the doorway of the apartment, apparently attempting to leave. At that moment, McCourty was wearing what appeared to Officer Dobles to be a knapsack.

McCourty shut himself in the apartment, and the officers knocked on the door, but McCourty would not open the door. The officers eventually "gained forcible entry into the apartment," but McCourty was no longer inside, having apparently utilized a balcony to make his escape. Within the apartment, the officers found a gun that resembled the one that Officer Anderson had seen in McCourty's hand earlier that night and a knapsack containing drugs, drug paraphernalia, and McCourty's New York State identification card. The substances contained within the foil pouch McCourty dropped to the ground and within the knapsack tested positive for powder and crack cocaine; the crack cocaine found within the backpack amounted to over five grams.

C.     Count Four (Felon-In-Possession of a Firearm)

In the separate portion of the trial pertaining only to Count Four, the government, in addition to the foregoing testimony, produced stipulations that the gun McCourty allegedly possessed on May 11, 2006, had traveled in interstate commerce and that McCourty was a

8

convicted felon.

D.    The Defense's Case

The defense called an investigator who had taken photographs of the repair shop and street corners on which McCourty was observed on May 1 and May 11, 2006, in an attempt to establish that the officers could not have seen the events to which they had testified. On cross-examination, the defense witness admitted that he had no knowledge of the officers' actual perspective on the dates McCourty was observed nor any personal knowledge of the events on the dates in question.

II.    The Charge Conference and Verdict Sheet

At the charge conference following the close of trial, the District Court discussed Count Three and the duplicity issue raised by defense counsel prior to the start of the trial. Because Count Three of the Superseding Indictment charged McCourty with "possess[ing] with intent to distribute a controlled substance, which offense involved (a) a substance containing cocaine, . . . and (b) 5 grams or more of a substance containing cocaine base" on or about May 11, 2006, Count Three encompassed the entirety of the drugs allegedly possessed by McCourty on May 11: (1) the cocaine and crack cocaine that he threw on the street and (2) the cocaine and more than five grams of crack cocaine found in his knapsack at his grandmother's apartment.

The District Court indicated that it would structure the Verdict Sheet[3] in such a way that the jury could indicate whether it found McCourty guilty of either possessing the drugs on the

---

[3] Count Three of the Superseding Indictment was presented on the Verdict Sheet as Count Two because of the pre-trial severance of Count One of the Superseding Indictment. The District Court stated that the jury was presented with the Verdict Sheet setting forth "Count One, Count Two, and Count Three, which in the [Superseding] [I]ndictment are Count Two, Count Three, and [C]ount Five respectively."

9

street or possessing the drugs in the knapsack (or both), with an additional question as to the five grams as to the drugs in the knapsack. Defense counsel objected, claiming that the language of Count Three required a finding that McCourty possessed five grams of crack cocaine, a requirement that would be defeated by the proposed charge. Defense counsel also argued that the division of Count Three constituted "a very substantial amendment of the indictment to essentially break down one charge into two charges." Defense counsel acknowledged that the Verdict Sheet "as a practical matter . . . could cure th[e] problem with ambiguity," but argued that the Verdict Sheet did not correspond to "the way the indictment is written and what was charged and what we have defended against, and what we had notice of, that's how we proceeded." In response, the court found that there was no "unfairness or lack of notice here" and ruled that

> it is commonly the case that more than one way of violating the statute is alleged within a single count. Sometimes it's a multiple object conspiracy; sometimes manufacture and distribution is alleged in a single count, and this case has obviously been about all along . . . the hand-to-hand transaction alleged to have been observed in the street and the drugs seized from the backpack.

Accordingly, the jury was then charged in conformity with the three counts set forth on the Verdict Sheet. Count Two of the Verdict Sheet provided as follows:

Count Two    Possession of Cocaine or Crack With Intent to Distribute — May 11, 2006

     a.    Possession with intent to distribute at the intersection of Amboy Street and Hegeman Avenue.

         Guilty _____            Not Guilty _____

     b.    Possession with intent to distribute at 1381 Linden Boulevard, Apartment 5A.

Guilty _____          Not Guilty _____

    **1. Only answer this question if you found the defendant guilty of Count Two(b)**. Has the government proved beyond a reasonable doubt that the defendant possessed with the intent to distribute more than five grams of crack?

    Yes _____          No _____

Following the jury's overnight deliberations, the jury returned the following partial verdict: (1) no verdict on Count Two of the Superseding Indictment (Count One on the Verdict Sheet), regarding McCourty's possession with intent to distribute cocaine and cocaine base on May 1; (2) no verdict as to the part of Count Three of the Superseding Indictment regarding McCourty's possession of cocaine and cocaine base on the street on May 11 (Count Two "a" on the Verdict Sheet); (3) not guilty as to the part of Count Three of the Superseding Indictment regarding McCourty's possession of cocaine and cocaine base found at his grandmother's apartment on May 11 (Count Two "b" on the Verdict Sheet); and (4) not guilty as to Count Five, regarding McCourty's possession of the firearm found at his grandmother's apartment (Count 4 on the Verdict Sheet). The District Court subsequently directed a mistrial as to the hung counts. The court also directed a not-guilty verdict as to Count Four (Count Three on the Verdict Sheet), which pertained to the charged offense of possession of a firearm in connection with a narcotics offense, in light of the jury's not-guilty verdict as to McCourty having allegedly possessed a firearm as a felon on May 11.

III.    Post-Trial Motions

At the close of trial, defense counsel made a motion for a directed verdict as to the part of Count Three of the Superseding Indictment regarding the possession of cocaine and cocaine base

on the street (appearing at Count Two "a" on the Verdict Sheet), re-arguing the duplicity issue and arguing that res judicata principles precluded a retrial on this count. The District Court stated that it would take up the issues at a later date.

Defense counsel also claimed with regard to Count Three that although the jury was undecided as to whether he possessed crack on the street on May 11, the court should direct a not-guilty verdict as to the entirety of Count Three because the specific wording of Count Three mentioned "five grams or more" of crack on May 11, and it was undisputed that McCourty's alleged possession of crack cocaine on the street on that date involved less than five grams of crack. Defense counsel concluded that the verdict precluded further prosecution as to the events of May 11, or at least any prosecution with respect to crack on that date. The District Court rejected McCourty's challenges and permitted the government to retry McCourty on Count Three only on the theory that McCourty possessed an unspecified amount of powder cocaine or crack cocaine on the street on May 11.

IV.    The Second Trial

A second trial was conducted on March 19, 2007, to resolve the remaining charges set forth in the Superseding Indictment — Count One, which had been severed from the first trial, and the counts for which the jury could not reach a verdict in the first trial, these being Count Two and the part of Count Three concerning McCourty's possession of the drugs on the street (appearing as Count Two (a) on the Special Verdict form). The second trial resulted in a conviction on all of these counts. At the second trial, the government presented the following evidence in support of its case-in-chief.

A.    Count One (Drug Possession On June 16, 2005)

12

NYPD Officers Anderson and Dobles, as well as NYPD Sergeant Lent (who had not been a witness at the first trial), testified as follows concerning the events on June 16, 2005: On June 16, 2005, Officers Anderson and Dobles, as well as Sergeant Lent, were given an assignment to speak with McCourty concerning two outstanding warrants for McCourty's arrest and an outstanding domestic violence complaint against McCourty. The District Court prohibited the officers from specifically mentioning the warrants and complaint during their testimony. The officers observed McCourty's car being towed and followed it to a repair shop in Brooklyn. The officers approached McCourty inside the tow yard of the repair shop, and, when McCourty observed the officers, McCourty motioned that he would be with them in a moment. McCourty then reached into the pocket of the sweatshirt he was wearing and threw a bag to the ground in front of him. The bag was recovered, McCourty was arrested, and the substance in the bag was later determined to be a large rock of crack cocaine. Officer Dobles placed McCourty under arrest and found more drugs on McCourty's person, namely, a large baggie of cocaine, a ziplock baggie of crack cocaine, and six ziplock baggies of marijuana. The weight of the crack cocaine found in the bag McCourty threw to the ground was 33.44 grams, and the weight of the powder cocaine found on McCourty's person was 14.33 grams.

B.      Count Two (Drug Possession On May 1, 2006)

The testimony of Officers Anderson and Dobles concerning Count Two mirrored their testimony at the first trial. Officer Anderson added at the second trial that McCourty was not attempting to hide his behavior during the drug transaction on May 1.

Officer Joseph Rodriguez (who had not been a witness at the first trial) testified that while on patrol with Officers Anderson and Dobles, he heard Anderson say, "There's Pete, he's

13

engaging in a hand-to-hand." Rodriguez looked over and saw McCourty brush by a taller Black male on the south side of Hegeman near Bristol Street. Rodriguez was less than ten feet from McCourty when he observed him, and there was nothing blocking his view of McCourty. He and the other officers exited their vehicle, at which time Officer Rodriguez heard one of the other officers say that McCourty had dropped something. Rodriguez looked down by the ground where McCourty was standing and saw a silver shiny packet. The officers arrested McCourty, and as he was being transported to the precinct, McCourty remarked that he thought the officers were after guns and that if he had known they were after drugs he "would have ran [sic]." The foil pouch thrown by McCourty contained 12 bags of crack cocaine and 3 bags of powder cocaine.

C.      Count Three (Drug Possession in the Street On May 11, 2006)

The testimony of Officers Anderson and Dobles concerning Count Three also mirrored that of the first trial, except that they did not testify about the chase of McCourty or the drugs and weapon found at McCourty's grandmother's apartment that day. Dobles added at the second trial that he was able to recognize McCourty, when the patrol vehicle was right up next to the corner of Hegeman and Amboy, because nothing was blocking his view of McCourty. He also testified that the area was well lit, and he pointed out the various street and building lights on a government exhibit containing enlarged photographs of the corner in question.

Sergeant Lent, the supervising officer, testified that while on patrol with the other officers on May 11 he saw McCourty standing on Hegeman Avenue close to Amboy Street. Sergeant Lent was driving the vehicle and recognized McCourty when he stopped for the stop sign at the intersection of Hegeman and Amboy. Sergeant Lent testified that there was nothing blocking his

14

view of McCourty and that the area was well lit by street lamps and box lamps on the parking garage. Sergeant Lent saw McCourty engage in a hand-to-hand drug transaction and described the individual with whom McCourty dealt as a Black man taller than McCourty. Sergeant Lent turned the patrol vehicle onto the sidewalk and, as the officers approached, McCourty ran off and dropped a package to the ground. The package turned out to be a foil pouch containing 18 bags of powder cocaine and six bags of crack cocaine. McCourty turned himself in on May 25, 2006.

### D. The Defense's Case

The defense re-called Officer Dobles in order to impeach him with what the defense believed to be a prior inconsistent statement concerning the drugs recovered on June 16, 2005 (Count One). The defense also called an investigator who had taken photographs of the repair shop, of the street corners on which McCourty was observed on May 1 and May 11, and of McCourty's grandmother's apartment. On cross-examination, the investigator admitted that he had no knowledge of the officers' actual perspective on the dates McCourty was observed nor any knowledge of the weather or street conditions on those dates.

## V. Proceedings Following the Second Trial

After deliberating, the jury returned a guilty verdict as to all three of the counts tried at the second trial. McCourty filed a motion pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure for an acquittal and for a new trial, principally arguing that the government's witnesses were not credible and perjured themselves in various respects. Specifically, the defense urged that the retrial had been infected by "rampant and pervasive perjury committed by each of the testifying police officers." At the outset of the sentencing proceeding, the District Court denied the motions in their entirety, concluding that "the resolution of the factual issues

15

here . . . is a matter properly left to the jury" and that there was no perjury of the kind complained of by McCourty.

As to sentencing, in the Second Addendum to the Presentence Investigation Report ("PSR"), issued on August 28, 2007, the Probation Department determined that McCourty's total offense level under the Guidelines was 30 and that his criminal history category was II, resulting in a range of imprisonment of 108 to 135 months. The Second Addendum arrived at the base offense level by combining the cocaine and crack cocaine attributable to McCourty based on his convictions for Counts One, Two and Three; namely, 35.86 grams of crack cocaine and 18.79 grams of powder cocaine.

As directed by Application Note 10(d) to U.S.S.G. § 2D1.1, the Second Addendum combined these two figures and converted them using the Drug Equivalency Tables into an equivalent amount of marijuana — in this case, 715.75 kilograms. According to the Second Addendum, this quantity of marijuana corresponded to an offense level of 30 under the Guidelines. In a pre-sentencing submission, McCourty argued that, as relevant here, the District Court should apply the then-proposed amendments to the Guidelines reducing the base offense level for crack cocaine by two levels.

At the sentencing proceeding on August 30, 2007, McCourty argued for a sentence below the applicable Guidelines range for a number of reasons, including "the policy considerations surrounding the undue severity of the crack guidelines." He urged the court to consider "whether the sentencing guidelines are an unsound judgment" on the crack/cocaine disparity issue and argued that the Supreme Court's decision in Rita v. United States, 551 U.S. 338 (2007), allowed the District Court to impose a sentence below the applicable Guidelines range on the basis of

16

"the undue severity of the crack guidelines."

The District Court indicated that he would apply the proposed amendments to the Guidelines and reduce McCourty's base offense level by two levels to level 28 and his criminal history category from II to I. This resulted in a range of a term of imprisonment of 78 to 97 months. The court determined that the imposition of a sentence of 78 months was appropriate and so ordered. McCourty timely appealed the judgment of conviction and sentence to this Court.

**ANALYSIS**

I.

McCourty's principal argument on appeal is that his rights under the Grand Jury Clause of the United States Constitution were violated when the District Court, over defense counsel's objection, divided Count Three of the Superseding Indictment into "two counts alleging two distinct crimes: one charging that he possessed the drugs 'on the street' and another charging that he possessed the drugs in apartment 5A." McCourty claims that the splitting of Count Three was a "constructive amendment of the [i]ndictment, a per se violation of the Fifth Amendment's Grand Jury Clause that requires reversal." McCourty claims that the only verdict that the first jury was able to reach on the offense charged in Count Three of the Superseding Indictment was an acquittal as to possession of drugs in apartment 5A, and he therefore argues that the first jury did acquit him of at least some portion of Count Three and that the acquittal must be treated as an acquittal of the entire "offense." As such, McCourty claims that the Double Jeopardy Clause barred the government from trying him again for that same offense, and the District Court therefore erred in allowing the trial of Count Three in the second trial on the issue of whether he

17

possessed drugs in the street on the same day.

We review double jeopardy claims de novo, United States v. Estrada, 320 F.3d 173, 180 (2d Cir. 2003), and we review constructive amendment issues de novo as well, United States v. Rigas, 490 F.3d 208, 225–26 (2d Cir. 2007). We also may consider the record as a whole in determining whether an indictment is in fact multiplicitous or duplicitous. United States v. Walsh, 194 F.3d 37, 46 (2d Cir. 1999).

A.

The Grand Jury Clause of the Fifth Amendment to the Constitution provides in relevant part that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The purpose of the Grand Jury Clause's requirement that a defendant be prosecuted only for those crimes set forth in the indictment is "to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." Stirone v. United States, 361 U.S. 212, 218 (1960); see also Fed. R. Crim. Proc. 7(c)(1) (requiring that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged"); Walsh, 194 F.3d at 44 (discussing constitutional sufficiency of an indictment and the reasons for such requirements).

The Supreme Court has held that "[t]he precise manner in which an indictment is drawn cannot be ignored, because an important function of the indictment is to ensure that, 'in case any other proceedings are taken against [the defendant] for a similar offen[s]e, . . . the record [will] sho[w] with accuracy to what extent he may plead a former acquittal or conviction.'" Sanabria v. United States, 437 U.S. 54, 65–66 (1978) (omission and alterations in original) (quoting Cochran

18

v. United States, 157 U.S. 286, 290 (1895)). As such, a court may not alter or amend the indictment, literally or constructively, once it has been returned by the grand jury. See Ex parte Bain, 121 U.S. 1, 10 (1887); see also Russell v. United States, 369 U.S. 749, 770 (1962) (reiterating Bain's holding that "an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form"). "An indictment has been constructively amended when the trial evidence or the jury charge operates to broaden the possible bases for conviction from that which appeared in the indictment." Rigas, 490 F.3d at 225 (internal quotation marks and alterations omitted). The jury charge must not "so alter[] an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." Id. at 227 (internal quotation marks omitted). A constructive amendment of an indictment is "a serious error," United States v. Ansaldi, 372 F.3d 118, 126 (2d Cir. 2004), and a per se violation of the Fifth Amendment, requiring automatic reversal, Rigas, 490 F.3d at 225–26.

We reject McCourty's constructive amendment claim because neither the trial evidence nor the jury charge altered Count Three of the Superseding Indictment. Count Three charges McCourty with only one offense of "possess[ion of a controlled substance] with intent to distribute [the] controlled substance." Count Three does identify two bases for this single offense; namely, the possession on one day of 5 grams or more of crack cocaine and the possession on the same day of an unspecified amount of cocaine. That the District Court distinguished the two bases of liability is of no consequence. No constructive amendment resulted when the District Court broke the single offense into two parts to be addressed by the jury. The Verdict Sheet's identification of the apartment as the place of drug possession and the

19

street as another location of drug possession does not alter any element of the single crime of drug possession, which occurred on May 11, 2006. Indeed, we have encouraged such special verdict sheets or interrogatories in cases where the indictment may be ambiguous. See, e.g., United States v. Sturdivant, 244 F.3d 71, 76 n.4 (2d Cir. 2001) (stating that, in a case involving an ambiguous but not impermissibly vague indictment, it is "the government's responsibility to seek special verdicts" to avoid subsequent double jeopardy consequences (internal quotation marks omitted)); see also United States v. Remington, 191 F.2d 246, 250 (2d Cir. 1951) (holding that the defendant's request for a special verdict on the specific basis of liability for the offense "was right and should be given if there is a new trial"); cf. United States v. Gomez-Rosario, 418 F.3d 90, 104 (1st Cir. 2005) (no constructive amendment creating two charges in one count where indictment alleged 100 grams or more heroin but verdict sheet permitted conviction for that amount or, alternatively, for less).

Although the plain language of Count Three may seem to allege two offenses because it is drafted in the conjunctive — that McCourty "did knowingly and intentionally possess with intent to distribute a controlled substance, which offense involved (a) a substance containing cocaine, a Schedule II controlled substance, and (b) 5 grams or more of a substance containing cocaine base, a Schedule II controlled substance" (emphasis supplied) — this Court has previously held that "[w]here there are several ways to violate a criminal statute . . . federal pleading requires . . . that an indictment charge [be] in the conjunctive to inform the accused fully of the charges. A conviction under such an indictment will be sustained if the evidence indicates that the statute was violated in any of the ways charged." United States v. Mejia, 545 F.3d 179, 207 (2d Cir. 2008) (omission and alteration in original; internal quotation marks

20

omitted).  In Mejia, we upheld a defendant's conviction where a count in the indictment alleged two forms of racketeering activity — threats of murder and narcotics trafficking.  The jury found the defendant not guilty of narcotics trafficking but guilty of threats of murder.  Id.  We concluded that the "'evidence indicate[d] that the statute was violated'" as to threats of murder.  Id. (quoting United States v. McDonough, 56 F.3d 381, 390 (2d Cir. 1995)).  The instant case is similar to Mejia in that here there is charged a single offense of possession "with intent to distribute a controlled substance, which offense involved (a) . . . and (b)."  Either "(a)" or "(b)" could form the basis for conviction.

We further note that the use of the Verdict Sheet did not expose McCourty to a greater possibility of conviction.  Under McCourty's mistaken view of the bifurcation and presentation of Count Three into Count Two on the Verdict Sheet, the two questions on the Verdict Sheet became separate "counts" or "offenses."  However, had the jury found McCourty guilty on Count Three by answering "yes" to both of the questions on the Verdict Sheet, McCourty still would have been convicted of only the one offense charged — that he "did knowingly and intentionally possess with intent to distribute a controlled substance."  The issue of the amount of the controlled substance was presented in a separate inquiry.  Moreover, had the District Court never split Count Three into two theories of liability, presented as Count Two, parts "a" and "b" on the Verdict Sheet, the jury still could have returned a verdict of guilty on the basis of either one of the incidents of May 11, 2006.  See Mejia, 545 F.3d at 207.  However, because we have the benefit on appeal of the current record, which includes the jury's findings as to parts "a" (no verdict) and "b" (not guilty) of Count Two of the Verdict Sheet, we are able to conclude that had this very same jury in this case been presented with a verdict sheet simply containing the

21

language of Count Three of the Superseding Indictment, the jury would either have reported no verdict because it was unable to agree on criminal liability for drug possession in the street or reported the same mixed verdict as appeared on the Verdict Sheet. In the event of the former, McCourty would have been retried on Count Three on both incidents of May 11, 2006. Thus, the use of the Verdict Sheet did not expand McCourty's liability, and, in fact, the Verdict Sheet benefitted McCourty in this case because it resulted in less exposure to criminal liability at the second trial.

Accordingly, we reject McCourty's claim that the Verdict Sheet constituted a constructive amendment of Count Three of the Indictment.

B.

The Double Jeopardy Clause of the Constitution forbids that "any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Under this clause, a defendant has a "valued right to have his trial completed by a particular tribunal," Wade v. Hunter, 336 U.S. 684, 689 (1949), which is a right held by the individual, independent of the public interest in conducting "fair trials designed to end in just judgments," Arizona v. Washington, 434 U.S. 497, 503 n.11 (1978) (internal quotation marks omitted).

> "'Under this Clause, once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense.'" United States v. Estrada, 320 F.3d at 180 (quoting Sattazahn v. Pennsylvania, 537 U.S. 101, 106 (2003)). In essence, the Double Jeopardy Clause protects criminal defendants against three things: (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969).

United States v. Olmeda, 461 F.3d 271, 278–79 (2d Cir. 2006) (parallel citations omitted).

22

However, a retrial after a hung jury is not prohibited by the Double Jeopardy Clause. Sturdivant, 244 F.3d at 77 (citing Richardson v. United States, 468 U.S. 317, 324 (1984)).

In Justices of Boston Municipal Court v. Lydon, 466 U.S. 294 (1984), the Supreme Court stated, in regard to the Double Jeopardy Clause, that

> [t]he underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

466 U.S. at 307 (quoting Green v. United States, 355 U.S. 184, 187–88 (1957)). "The primary purpose of foreclosing a second prosecution after conviction, on the other hand, is to prevent a defendant from being subjected to multiple punishments for the same offense." Id. (citing United States v. Wilson, 420 U.S. 332, 343 (1975)).

In United States v. Rivera, 77 F.3d 1348 (11th Cir. 1996) (per curiam), our sister Circuit examined an issue similar to that with which we are faced in this case. In Rivera, the defendant was indicted for possession of a firearm in violation of 18 U.S.C. § 922(g)(1) in a single count that alleged possession of the firearm on two different dates, August 12, 1994, and February 5, 1995. Id. at 1350. As here, the court used a special verdict form to divide the count into two inquiries — one for each date. Id. The jury returned a finding of not guilty as to the February 5 event but reached no decision as to the August 12 event. Id. The district court declared a mistrial for the jury's failure to reach a decision in response to the second inquiry, and the defendant moved to dismiss the entire count on grounds of double jeopardy and collateral estoppel. Id. The motion was denied, and the defendant appealed. Id. On appeal, the Eleventh

23

Circuit affirmed, holding that the Double Jeopardy Clause did not preclude the government from retrying the defendant on the portion of the count to which the jury failed to reach a decision.

> The protection of the Double Jeopardy Clause "applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." Richardson v. United States, 468 U.S. 317, 325 (1984) (citations omitted). Appellant has been found "not guilty" as to one of the dates charged. The jury's finding that the defendant was "not guilty" of the "charge" of possessing the shotgun on February 5, 1995, was merely a finding that the Government had not demonstrated possession on this date beyond a reasonable doubt. This does not, however, constitute an acquittal of the charged possession as a whole because proof of possession on February 5, 1995, is not necessary to support a conviction for the charged offense. When the jury deadlocked as to the August 12, 1994, date, and the district court declared a mistrial, jeopardy did not fully terminate. Therefore, the Double Jeopardy Clause does not bar a second prosecution as to the alleged August 12, 1994, possession. See id. at 325–26 (declaration of mistrial following hung jury does not terminate the original jeopardy).

Id. at 1351–52 (citations omitted; emphasis supplied).

The only real distinction between this case and Rivera is that in Rivera the count initially alleged the two bases of liability by identifying the separate dates upon which the offense was committed, whereas here Count Three did not break down the separate incidents of May 11 by time. Count Three stated only that the offense involved "(a)," powder cocaine, and "(b)," five grams or more of crack cocaine. This distinction, however, does not affect the significance of two theories being identified in one count.[4] When the Verdict Sheet was presented to the jury

---

[4] We note that it is immaterial that Count Three charged McCourty with both possession of an unspecified amount of cocaine, in violation of 21 U.S.C. § 841(b)(1)(C), and possession of 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(B)(iii). While the offenses arise under separate statutory provisions and the latter requires proof of an element not required by the former, see United States v. Gonzalez, 420 F.3d 111, 131 (2d Cir. 2005) ("[D]rug quantity is an element that must always be pleaded and proved to a jury or admitted by a defendant to support a conviction or sentence on an aggravated offense under § 841(b)(1)(B)(iii) or -(b)(1)(B)."), the two are nevertheless considered a single offense for purposes of double jeopardy and duplicity, cf. Blockburger v. United States, 284 U.S. 299, 304 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be

here, it did not create two "counts" or "two crimes" but two independent bases or theories of liability. Where the jury is directed to make specific findings as to the separate bases of liability set forth in the indictment, we see no danger of a double jeopardy violation. The indictment itself puts the defendant on notice of the theories of liability, and there is no broadening of the possibility of conviction or multiple punishments for the same offense. See supra Part I(A). Thus, we hold that the defendant may be retried for a portion of the count to which he was neither acquitted nor convicted provided the jury is particular about its findings with respect to the different theories of liability contained in that count.

The Supreme Court's decision in Sanabria is not to the contrary. In Sanabria, the defendant was charged under one count of conducting an illegal gambling business involving horse betting and numbers betting. 437 U.S. at 57. The defendant was acquitted of the entire count after the district court excluded evidence relating to the numbers-betting portion of the count. Id. at 66, 68–69. On appeal, the Court of Appeals vacated the judgment and remanded for a new trial on the numbers theory. United States v. Sanabria, 548 F.2d 1 (1st Cir. 1976). Before the Supreme Court, the government argued that the district court's exclusion of evidence amounted to a dismissal of the numbers-betting portion of the count, and, therefore, double jeopardy did not foreclose the government from pursuing the prosecution of the defendant for conducting an illegal gambling business involving only numbers betting. Sanabria, 437 U.S. at 66–69. The Supreme Court concluded that the district court's evidentiary ruling did not in fact amount to a dismissal of the numbers-betting portion of the count, and, thus, because the

applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.").

25

defendant was acquitted of the entire count, double jeopardy barred the government from prosecuting defendant for conducting an illegal gambling business as to either horse betting or numbers betting.

> No language in the indictment was ordered to be stricken, nor was the indictment amended. The judgment of acquittal was entered on the entire count and found [the defendant] not guilty of the crime of violating 18 U.S.C. § 1955 (1976 ed.), without specifying that it did so only with respect to one theory of liability[.]

Id. at 66–67 (citation omitted).

The Supreme Court further concluded that even if the numbers-betting portion of the count had been dismissed, double jeopardy would still bar the government from retrying the defendant for conducting an illegal gambling business involving only the numbers betting. Id. at 69. The Supreme Court explained that the defendant's acquittal was based on a finding of not guilty "for a failure of proof on a key factual element of the offense charged: that he was connected with the illegal gambling business." Id. at 71 (internal quotation marks omitted). "Had the Government charged only that the business was engaged in horse betting and had [the defendant] been acquitted, his acquittal would bar any further prosecution for participating in the same gambling business during the same time period on a numbers theory." Id. at 71–72.

Here, unlike in Sanabria, each theory of liability was identified for the jury to resolve, permitting the jury to acquit as to a part of Count Three. Cf. Sanabria, 437 U.S. at 66–67 (stating that the defendant was acquitted as to the entire count and that the judgment of acquittal was entered "without specifying . . . [a] theory of liability"). The jury in the case before us reported no verdict on the question of whether McCourty was guilty as to part "(a)" of Count Three, which alleged his possession of drugs in the street, but reported a verdict of not guilty as to part

26

"(b)," which alleged his possession of drugs in an apartment. Thus, the jury's verdict of not guilty as to the allegation that McCourty possessed drugs in the apartment did not amount to a complete acquittal of the offense charged in Count Three.

Furthermore, that the jury acquitted McCourty of possession of drugs in the apartment is not a "key factual element" that requires the conclusion that McCourty did not possess drugs in the street. Unlike in Sanabria, where acquittal of the defendant's involvement in any gambling business alleged in the indictment foreclosed the possibility that he was engaged in a gambling business involving numbers betting, McCourty's acquittal of drug possession in one location does not foreclose the possibility of drug possession in another location. Certainly, had the jury found that McCourty possessed no drugs at all on May 11, a retrial on either basis of liability in Count Three would be barred by double jeopardy. That, however, is not the case. McCourty was never retried on the theory of liability for possession in the apartment and thus sustained no double jeopardy in regard to that incident.

Accordingly, because there was neither a complete acquittal on Count Three nor an acquittal relating to a key factual element of the crime described in the count, there is no Double Jeopardy violation in the government's pursuance of a retrial of Count Three as to that portion undecided by the jury.

## II.

McCourty also claims in his appeal that the District Court erred when it denied his Federal Rule of Criminal Procedure Rule 33 motion seeking a new trial on all counts. McCourty specifically alleged in his Rule 33 motion that the testifying police officers had lied at the second trial about the issue of where the drugs had been found on June 16, 2005, and by whom, and

27

about the May 1 and May 11 drug transactions. In his motion and in this appeal, McCourty referred to the following in connection with his allegations of perjury: (1) Officer Dobles's claim that the "A/O" entry on the "Narcotics Possession Fact Sheet" sometimes referred to "assisting officer" rather than "arresting officer" and Dobles's statement that he could not recall what "A/O" referred to in this case; (2) Officer Anderson's testimony that he had witnessed the hand-to-hand transaction on May 1, 2006, when his own report indicated that no hand-to-hand transaction occurred; (3) the testimony by Officers Rodriguez and Lent that the supposed drug buyer on both May 1, 2006, and May 11, 2006, was a "taller Black man." McCourty also claimed in his motion that the defense identified a host of smaller inconsistencies" that arguably demonstrated that Officer Anderson was an "inveterate perjurer."

We review challenges to a district court's denial of a Rule 33 motion "for an abuse of discretion" and "accept the district court's factual findings unless they are clearly erroneous." United States v. Gallego, 191 F.3d 156, 161 (2d Cir. 1999). "[Rule 33] motions are granted only in 'extraordinary circumstances,' and are committed to the trial court's discretion." United States v. Torres, 128 F.3d 38, 48 (2d Cir. 1997) (citation omitted) (quoting United States v. Moore, 54 F.3d 92, 99 (2d Cir. 1995)).

The defendant bears the burden of proving that he is entitled to a new trial under Rule 33, and before ordering a new trial pursuant to Rule 33, a district court must find that there is "'a real concern that an innocent person may have been convicted.'" United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)). Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, "[i]t is only where exceptional circumstances can be

28

demonstrated that the trial judge may intrude upon the jury function of credibility assessment."
Sanchez, 969 F.2d at 1414. An example of exceptional circumstances is where testimony is "patently incredible or defies physical realities," and the district court's identification of problematic testimony does not automatically meet this standard. Id.

Even where courts in this Circuit have clearly identified perjured testimony, they have refused to grant a new trial unless the court could find that the jury "probably would have acquitted in the absence of the false testimony." Id. at 1413–15 (refusing to grant a new trial under Rule 33 on the basis of perjured testimony because it "could not be said that the jury probably would have acquitted in the absence of the false testimony"). In short, where the resolution of the Rule 33 motion "depend[s] on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d Cir. 1992).

In this case, the District Court acknowledged that it was "troubled" by some of the police testimony at trial and that there were "problems" with it. Nonetheless, the court found that McCourty failed to demonstrate "exceptional circumstances" justifying overturning the jury's verdict. Specifically, the District Court found that "the resolution of the factual issues here, given these various officers' accounts of events, is a matter properly left to the jury." The court noted that the bases for McCourty's claims of perjury were "problems with the [police] reports and the vantage point of Officer Anderson and the like" and therefore raised "quintessential cross-examination issues, credibility issues . . . and [that] this is why we have juries." The court further found that it "[did]n't believe there's rampant perjury here" even in light of his concern over a portion of Officer Dobles's testimony.

29

On the record before us, we can detect no abuse of discretion by the District Court in denying McCourty's Rule 33 motion. It is the function of the jury to weigh the evidence and to assess the credibility of those witnesses who testify. It was therefore well within the purview of the jury to resolve any discrepancies in the testimony of Officer Dobles and Sergeant Lent, testimony that McCourty now claims was perjured. Although Dobles testified that he did not recall whether he was the officer who recovered the drugs in the street on May 11, his Narcotics Possession Fact Sheet included the notation "A/O." McCourty contends that this notation demonstrated that Dobles was the arresting officer who retrieved the drugs. However, Dobles also testified that "A/O" sometimes refers to "Assisting Officer." Sergeant Lent testified that he was the officer who recovered the drugs, and defense counsel cross-examined him at length using Lent's prior statements and "memo book entries." The testimony of these officers was not so patently incredible or defiant of physical realities as to justify intrusion upon the jury's verdict.

We also reject McCourty's claim of perjury arising from the alleged conflict between Officer Anderson's testimony that he saw McCourty engage in a hand-to-hand transaction on May 1, 2006, and the fact that this observation by Officer Anderson was not reflected in Anderson's report. There was testimony from Officers Dobles and Rodriguez corroborating Officer Anderson's testimony regarding his observation of the transaction. Similarly, we also reject McCourty's claim that the testimony of Officers Rodriguez and Lent was perjured simply because the officers did not testify at the suppression hearing or at the first trial and had no notes or reports indicating that they saw a person — i.e., a "taller black male" — make physical contact with McCourty. The jury was entitled to assess and weigh the credibility of these officers and make the necessary findings that it did. Accordingly, we conclude that the District Court did not

30

abuse its discretion in denying McCourty's post-trial Rule 33 motion as we can discern no "manifest injustice" in allowing the verdict in this case to stand, and we have no "real concern that an innocent person may have been convicted" in this case. United States v. Canova, 412 F.3d 331, 349 (2d Cir. 2005) (internal quotation marks omitted).

III.

McCourty also contends in his appeal to this Court that we should remand the case to the District Court, pursuant to Kimbrough v. United States, 128 S. Ct. 558 (2007), which had not been decided at the time of McCourty's sentencing. McCourty seeks to have the District Court resentence him in light of Kimbrough, which provides the legal basis for his claim that the Sentencing Commission's disparate treatment of crack and powder cocaine was unwarranted and rendered the advisory sentencing range in this case "greater than necessary" under 18 U.S.C. § 3553. The government does not object and agrees that this case "should be remanded for resentencing."

In Kimbrough, the Supreme Court held that a policy disagreement with the cocaine powder/crack cocaine disparity in the Guidelines can be grounds for a non-Guidelines sentence. In United States v. Regalado, 518 F.3d 143 (2d Cir. 2008), this Court observed that our decision in United States v. Castillo, 460 F.3d 337 (2d cir. 2006), "may have been over-read or misread to inhibit any deviation" from the policy and that "when a district court sentenced a defendant for a crack cocaine offense before Kimbrough, there was an unacceptable likelihood of error." Regalado, 518 F.3d at 147. In Regalado, the defendant, at the time of his sentencing in the district court, did not request a deviation, and Castillo had not yet been decided. Regalado, 518 F.3d at 146. The Court therefore employed a remand, similar to that in United States v. Crosby,

397 F.3d 103 (2d Cir. 2005), for the district court to determine whether it would have imposed the same sentence had it been aware of the discretion accorded it under Kimbrough. Regalado, 518 F.3d at 149.

In the District Court, McCourty did argue that a deviation was warranted based upon the crack/cocaine disparity, notwithstanding the government's claim at that time that "the Second Circuit case law is clear on limiting the court's ability to take into account policy disagreements with the guidelines in fashioning a nonguideline sentence." Although the District Court deviated and adjusted the sentencing range to reach the sentence that McCourty would have received under the then-pending revisions to the Guidelines that limit the disparity, the District Court still expressed its opinion that "[t]he [United States Sentencing] Commission . . . has constantly been making the guidelines onerous" and characterized the revisions as only a "tiny first step to remedy unfairness." Therefore, we conclude that we cannot state with any degree of certainty that the District Court would not have imposed a lower sentence had it been aware of Kimbrough's abrogation of the rule announced in Castillo, and we remand this case for the limited purpose of allowing the District Court to re-sentence McCourty in accordance with the foregoing.

## CONCLUSION

We AFFIRM the judgment of conviction and REMAND for the limited purpose of allowing the District Court to re-sentence the Defendant in light of Kimbrough.