19-2918-cr(L)
*United States v. Aguirre*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of May, two thousand twenty-one.

PRESENT:    Robert A. Katzmann,
            Barrington D. Parker,
            Steven J. Menashi,
                    *Circuit Judges.*

_____

United States of America,

     *Appellee,*

   v.                                                No. 19-2918-cr(L)
                                                   No. 19-3407-cr(CON)

Martha Aguirre, Juan Alfaro,

     *Defendants-Appellants,*

Jose Ruben Gil, Herman E. Aguirre, Sonia Hernandez, Margaret Banuelos, Troy R. Gillon, Darryl J. Williams, Trent Adair Hamilton, Michael Pau Mitchell, Demetrius Yarborough, Maulana Lucas, Shirley Grigsby, Ralik Hamilton, Joseph Thompson, Dion Cheatham, Rashawn Crule,

    *Defendants.*[*]

_____

| | |
|---|---|
| *For Appellee*: | Katherine A. Gregory, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY. |
| *For Defendant-Appellant Aguirre*: | Mehmet Kemal Okay, Batavia, NY. |
| *For Defendant-Appellant Alfaro:* | Scott M. Green, Rochester, NY. |

Appeal from a judgment of the United States District Court for the Western District of New York (Vilardo, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

---

[*] The Clerk of Court is directed to amend the caption of the lead docket No. 19-2918-cr as set forth above.

Defendants-Appellants Martha Aguirre and Juan Alfaro were tried together by a jury and convicted of conspiracy to possess with the intent to distribute heroin, fentanyl, and cocaine, in violation of 21 U.S.C. § 841 and § 846, and of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). The district court (Vilardo, J.) sentenced Aguirre to an aggregate term of imprisonment of 150 months with five years of supervised release, and Alfaro to an aggregate term of imprisonment of 120 months with five years of supervised release.

Before this court, Aguirre appeals her conviction on the grounds that the government presented insufficient evidence to establish her knowing participation in the conspiracies and that the government suborned perjury and thereby violated her due process rights. Alfaro appeals his conviction on the ground that the district court erred in denying his motion for a new trial pursuant to Federal Rule of Criminal Procedure 33(a). We disagree and affirm. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal.

**I**

The defendants concede that there was a money laundering conspiracy and that drug-trafficking proceeds passed through their bank accounts. Nevertheless,

3

Aguirre argues that the government failed to meet its burden of proof to establish that she knew that the deposits made into the bank accounts of Kamora Investment Enterprises, Inc. ("Kamora") were proceeds of a narcotics conspiracy.

Sufficiency-of-the-evidence challenges are reviewed *de novo*, but "a defendant challenging the sufficiency of the evidence bears a heavy burden, as the standard of review is exceedingly deferential." *United States v. Litvak,* 808 F.3d 160, 169 (2d Cir. 2015). This court "must review the evidence in the light most favorable to the Government, crediting every inference that could have been drawn in the Government's favor, and deferring to the jury's assessment of witness credibility and its assignment of the weight of the evidence." *Id.* at 170.

When witness testimony includes contradictions, we will defer to the jury's determinations regarding the weight of the evidence and the credibility of the witnesses, *see United States v. Persico,* 645 F.3d 85, 104-05 (2d Cir. 2011), because a "jury is entitled to believe part and disbelieve part of the testimony of any given witness" and "a witness who may have been inaccurate, contradictory and even untruthful in some respects" may be "nonetheless entirely *credible in the essentials* of his testimony," *United States v. Flores*, 945 F.3d 687, 710-11 (2d Cir. 2019). We will uphold the judgments of conviction if "*any* rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *United States v. Hardwick,* 523 F.3d 94, 100 (2d Cir. 2008).

Here, the trial judge properly instructed the jury:

> In determining whether one or both of the defendants acted knowingly, you may consider whether that defendant deliberately closed his or her eyes to what otherwise would have been obvious to him or her. If you find beyond a reasonable doubt that one or both of the defendants acted with a conscious purpose to avoid learning the truth, for example, that certain money came from unlawful activity, then this element may be satisfied. … If you find that a defendant was aware of a high probability of the truth, for example, that certain money came from unlawful activity, and that the defendant acted with deliberate disregard of the facts, you may find that the defendant acted knowingly.

App'x 2155-56. This court has repeatedly held that a defendant's deliberate ignorance or conscious avoidance of the true purposes of his unlawful activities may support a finding with respect to the defendant's knowledge of the objectives of the conspiracy at issue. *See, e.g., United States v. Reyes*, 302 F.3d 48, 54-55 (2d Cir. 2002); *United States v. Walker*, 191 F.3d 326, 337 (2d Cir. 1999); *United States v. Eltayib*, 88 F.3d 157, 170 (2d Cir. 1996).

Here, Aguirre is the sister of one of the leaders of the drug trafficking and money laundering operation, Herman Aguirre. She was the president of a company, Kamora, that had more than eight million dollars in drug proceeds pass

5

through its accounts, and she was the sole corporate officer authorized to transfer and withdraw funds. She "enjoyed a trust position within the conspiracy" that would allow a juror to "infer h[er] knowledge of the conspiracy's goal of distributing controlled substances." *United States v. Anderson*, 747 F.3d 51, 69 (2d Cir. 2014); *see also United States v. Huezo*, 546 F.3d 174, 182 (2d Cir. 2008) ("Based on the complexity and scale of the money laundering scheme, common sense and experience would support an inference that the principals in the conspiracy would not have trusted an outsider (with no knowledge of their criminal purpose) to transport … laundered funds.").

The undisputed evidence at trial established that Kamora employed no other officers or employees. Aguirre stated in an affidavit that she "had no meetings, no calls, no customers." App'x 893. The invoices and currency transaction reports from Aguirre's bank indicated that Kamora purportedly (1) purchased more sea cucumbers than it sold, including to a purchaser that does not exist; (2) made only $1,675,300 in sales revenue—significantly less than the $8,359,550 deposited into Kamora's accounts; and (3) sold nearly 20,000 more units of sea cucumbers than it had reportedly purchased, with the purchase price per unit 50 cents more than the sale price, implying that Kamora sold its sea cucumbers

6

at a loss. Because Aguirre could not otherwise account for the money deposited into Kamora's account, the jury could infer that Aguirre operated Kamora as a front for the conspiracy.

The jury also heard that Kamora's accounts were opened on June 13, 2014, just three weeks after Aguirre transported drugs from California to New York over Memorial Day weekend. Darryl Williams testified that Herman Aguirre gave him the deposit information for Kamora's x4948 account. Aguirre purportedly never asked where the money came from, despite the large sums involved. Additionally, there was sufficient evidence to establish that Aguirre knowingly transported narcotics during her Memorial Day weekend trip in 2014. Records from the vehicle rental company and the Best Western Hotel—as well as Aguirre's plane ticket—confirmed that she drove from California to Buffalo, and she promptly returned the vehicle and flew back home after meeting with a known drug dealer.

From this and other evidence presented at trial, a reasonable juror could infer that Aguirre either knew or "was aware of a high probability of the fact" that the deposits into her accounts were proceeds of a narcotics conspiracy "and

consciously avoided confirming that fact." *United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir. 1993).

## II

Aguirre did not object to the district court's jury instructions concerning the admission of Sonia Hernandez's testimony. We therefore review her due process claim for plain error. *See* Fed. R. Crim. P. 52(b); *see also Davis v. United States,* 140 S. Ct. 1060, 1061 (2020) ("When a criminal defendant fails to raise an argument in the district court, an appellate court ordinarily may review the issue only for plain error."). Under this standard, we will vacate a conviction for erroneous jury instructions only if the instruction includes (1) an error (2) that is plain, (3) affects substantial rights, and (4) "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Grote*, 961 F.3d 105, 115-16 (2d Cir. 2020) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)); *see also United States v. Gore*, 154 F.3d 34, 43 (2d Cir. 1998) ("A 'plain' error is 'an error so egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's failure to object.'").

Aguirre argues that the government suborned perjury and committed prosecutorial misconduct by allowing Hernandez to testify. Aguirre points to

8

Hernandez's record of repeated dishonesty as well as discrepancies between her statements at trial and those contained in her guilty plea. Aguirre claims that Hernandez committed perjury when she denied having affirmative knowledge that her two cross-country trips—during Memorial Day weekend 2014 and in June 2014—were for the purpose of drug trafficking. Aguirre argues that this testimony contradicts Hernandez's guilty plea to conspiracy with intent to distribute narcotics and to launder money.

Among many examples, Hernandez testified that she suspected her actions involved drugs but that she deliberately avoided asking questions because "the less I knew of what was going on, … [the] better for me." App'x 1468-69. She testified that, during the Memorial Day weekend trip, Aguirre explained that they could "hide the smell" of "[t]he drugs that were in the car" by opening bags of chips during their drive to Buffalo. App'x 1280. Hernandez was present during a DEA raid—occurring prior to both trips—that uncovered drugs in Gil's warehouse where she worked, and she believed the money she handled was drug proceeds. App'x 1261, 1274, 1277, 1301-02, 1457, 1420 1471-72. Hernandez also testified that the invoices she prepared for Alfaro and Aguirre were fake because

"they didn't sell sea cucumbers. So the information on [the invoices] w[ere] made up because their business[es] had nothing to do with sea cucumbers." App'x 1291.

Hernandez testified that she complied with Herman Aguirre's instructions to exchange the initial rental car for an SUV during her June 2014 trip because an SUV would have more "space when you take out the compartment in the back to hide packages." App'x 1295. During her June 2014 trip, she witnessed Herman Aguirre hide packages in the SUV and had "some sort of suspicion" about what the packages contained, App'x 1431, but she did not confront Herman Aguirre about the purposes of either trip or what she was transporting until after her arrest in Nebraska.

This is no contradiction between Hernandez's guilty plea and her testimony. Based on her testimony, a reasonable juror could infer that Hernandez "was aware of a high probability of the fact" that the trips were in service of drug trafficking and she "consciously avoided confirming that fact." *Rodriguez*, 983 F.2d at 458. Hernandez's guilty plea to participating in the drug conspiracy is therefore consistent with her testimony that she lacked specific knowledge about what she was transporting because she deliberately avoided confirming her suspicions.

Moreover, the question of Hernandez's credibility was placed before the jury. The district court correctly instructed the jury that it should carefully scrutinize the credibility of a witness who proffered inconsistent testimony, lied under oath in a previous proceeding, or otherwise demonstrated a history of dishonest behavior. In pertinent part, the district court explained:

> If you find that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe. … It is exclusively your duty based upon all the evidence and your own good judgment to determine whether the prior statement was inconsistent and if so how much if any weight to be given to the inconsistent statement in determining whether to believe all or part of the witness's testimony. You have heard evidence that a witness who testified at this trial lied under oath at another proceeding. The testimony of a witness who has lied under oath should be viewed cautiously and weighed with great care. But it is up to you to decide how much of that witness's testimony if any you wish to believe.

App'x 2189-90. Both Aguirre's and Alfaro's counsel cross-examined Hernandez at length on the purported discrepancy between her explanation of what she knew and the wording of her plea agreement. During closing arguments, Aguirre's counsel repeatedly attacked Hernandez's credibility as a witness, highlighting her purportedly false statements and calling her a "Hollywood actress" and "just the biggest liar." App'x 2082, 2081. Alfaro's counsel similarly questioned the probative value of Hernandez's testimony. Under these circumstances, we defer "to the

11

jury's assessment of witness credibility and its assignment of the weight of the evidence." *Litvak*, 808 F.3d at 170.

## III

Alfaro argues that the district court abused its discretion in denying his motion for a new trial pursuant to Rule 33(a). A defendant bears a heavy burden in seeking to reverse the denial of a Rule 33 motion; we will overturn such a denial only in extraordinary circumstances. *See United States v. Snype,* 441 F.3d 119, 140 (2d Cir. 2006). The "ultimate test" in deciding whether to grant a Rule 33 motion is "whether letting a guilty verdict stand would be a manifest injustice." *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005). Absent extraordinary circumstances, questions regarding the credibility or consistency of testimony affect the weight of the evidence rather than its sufficiency. *See Persico*, 645 F.3d at 104; *United States v. Gonzalez,* 110 F.3d 936, 941 (2d Cir. 1997).

The district court did not abuse its discretion in denying Alfaro's Rule 33 motion because Alfaro failed to establish that the witnesses' testimony was incredible. Hernandez's testimony neither amounted to perjury nor was it otherwise incredible. Similarly, Alfaro could not point to any statements made by

12

Gil that were incredible. Instead, Alfaro bases his claim on Gil's and Hernandez's history of repeated dishonesty.

Such a history, however, affects only the weight of their testimony. "[W]here the resolution of a Rule 33 motion depends on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *United States v. McCourty*, 562 F.3d 458, 476 (2d Cir. 2009) (internal quotation marks and alteration omitted). The credibility of both witnesses was probed extensively during cross-examination and the district court correctly instructed the jury to evaluate the value of the testimony with caution and to assess the totality of the evidence. This court has previously held that a district court does not abuse its discretion by denying a Rule 33 motion when the jury, in an informed manner, exercised its responsibility to weigh the credibility of testimony that a defendant later claims was perjured. *See id.* at 475-76.

\* \* \*

We have reviewed the remaining arguments raised by Alfaro and Aguirre on appeal, which we conclude are also without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court